**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>BROOKSTONE HOLDINGS CORP., *et al.,*<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 18-11780-BLS<br><br>(Jointly Administered) |
| META Advisors LLC, as Liquidating Trustee of the Brookstone Liquidating Trust,<br><br>Plaintiff,<br><br>vs.<br><br>Whynter, LLC,<br><br>Defendant. | Adv. No. **Refer to Summons** |

**COMPLAINT TO AVOID AND RECOVER TRANSFERS PURSUANT TO 11 U.S.C. §§ 547, 548, 549 AND 550 AND TO DISALLOW CLAIMS PURSUANT TO 11 U.S.C. § 502**

META Advisors LLC, as Liquidating Trustee of the Brookstone Liquidating Trust (the "Trustee" or "Plaintiff"), by and through its undersigned counsel, files this complaint (the "Complaint") to avoid and recover transfers against Whynter, LLC (the "Defendant") and to disallow any claims held by Defendant. In support of this Complaint, Plaintiff alleges upon information and belief that:

**NATURE OF THE CASE**

1. Plaintiff seeks to avoid and recover from Defendant, or from any other person or entity for whose benefit the transfers were made, all preferential transfers of property that occurred during the ninety (90) day period prior to the commencement of the bankruptcy proceedings of

---

[1] The Debtors, along with the last four digits of each Debtor's tax identification number, are: Brookstone Holdings Corp. (4638), Brookstone, Inc. (2895), Brookstone Company, Inc. (3478), Brookstone Retail Puerto Rico, Inc. (5552), Brookstone International Holdings, Inc. (8382), Brookstone Purchasing, Inc. (2514), Brookstone Stores, Inc. (2513), Big Blue Audio LLC (N/A), Brookstone Holdings, Inc. (2515), and Brookstone Properties, Inc. (2517). The Debtors' corporate headquarters and the mailing address for each Debtor is One Innovation Way, Merrimack, NH 03054.

1

Brookstone Holdings Corp. and its affiliated debtors and debtors in possession (collectively, the "Debtors")[2] pursuant to sections 547 and 550 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). Subject to proof, Plaintiff also seeks to avoid and recover from Defendant or any other person or entity for whose benefit transfers were made pursuant to sections 548 and 550 of the Bankruptcy Code any transfers that may have been fraudulent conveyances. Plaintiff also seeks to avoid and recover from Defendant or any other person or entity for whose benefit transfers were made pursuant to sections 549 and 550 of the Bankruptcy Code any transfers that were made after the Debtors commenced their bankruptcy cases and which transfers were not authorized by the Bankruptcy Code or this Court.

2.      In addition, Plaintiff seeks to disallow, pursuant to sections 502(d) and (j) of the Bankruptcy Code, any claim that Defendant has filed or asserted against the Debtors or that has been scheduled for Defendant. Plaintiff does not waive but hereby reserves all of its rights and the rights of the Debtors to object to any such claim for any reason, including, but not limited to, any reason set forth in sections 502(a) through (j) of the Bankruptcy Code.

## JURISDICTION AND VENUE

3.      This court has subject matter jurisdiction over this adversary proceeding, which arises under title 11, arises in, and relates to cases under title 11, in the United States Bankruptcy Court for the District of Delaware (the "Court"), captioned *In re Brookstone Holdings Corp., et al.,* Case No. 18-11780 (BLS), pursuant to 28 U.S.C. §§ 157 and 1334(b).

4.      The statutory and legal predicates for the relief sought herein are sections 502, 547, 548, 549 and 550 of the Bankruptcy Code and Rules 3007 and 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

---

[2] The "Debtors" are all entities listed in footnote 1.

5. This adversary proceeding is a "core" proceeding to be heard and determined by the Court pursuant to 28 U.S.C. § 157(b)(2) and the Court may enter final orders for matters contained herein.

6. Venue is proper in the District of Delaware pursuant to 28 U.S.C. § 1409.

7. Pursuant to Local Bankruptcy Rule 7008-1, Plaintiff states that it does consent to the entry of final orders or judgments by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## PROCEDURAL BACKGROUND

8. On August 2, 2018 (the "Petition Date"), the Debtors each commenced a case by filing a voluntary petition for relief in this Court under chapter 11 of the Bankruptcy Code.

9. On August 3, 2018, the Court entered an order authorizing the joint administration of the chapter 11 cases for procedural purposes pursuant to Bankruptcy Rule 1015(b). [D.I. 64].[3]

10. On March 20, 2019, this Court entered an order confirming the *Debtors' Third Amended Joint Plan of Liquidation under Chapter 11 of the Bankruptcy Code of Brookstone Holdings Corp., et al., Submitted by the Debtors and the Official Committee of Unsecured Creditors as Co-Proponents* (the "Confirmation Order" and "Plan," respectively). [Confirmation Order, D.I. 1138; Plan, 1138-1].

11. The effective date of the Plan occurred on April 1, 2019 (the "Effective Date"). [D.I. 1157]. In accordance with the Plan and Confirmation Order, the Brookstone Liquidating

---

[3] All docket items referenced are from Case No. 18-11780, under which the Debtors' bankruptcy cases are jointly administered.

Trust (the "Trust") was established effective on the Effective Date of the Plan, and the Debtors and the Trustee entered into that certain Liquidating Trust Agreement.

12. Pursuant to Article III, Section A of the Plan, General Unsecured Claims comprise an impaired class of creditors and are not expected to be paid in full.

## THE PARTIES

13. Pursuant to paragraph 10 of the Confirmation Order and Article IV, Section C.4 of the Plan, the Liquidating Trust Assets, including Causes of Action (as defined in the Plan) arising under chapter 5 of the Bankruptcy Code, were transferred to the Trust. [D.I. 1138-1]. Under the Plan, Confirmation Order, and the Liquidating Trust Agreement, the Trustee was appointed to administer the Trust and has standing, among other things, to settle or abandon avoidance actions under chapter 5 of the Bankruptcy Code, including this avoidance action.

14. Upon information and belief, Defendant was, at all relevant times, a vendor or creditor that provided air conditioning services to or for the Debtors. Upon further information and belief, at all relevant times, Defendant's principal place of business is located at 3320 E. Birch Street, Brea, California 92821. Plaintiff is informed and believes and on that basis alleges that Defendant is a limited liability company residing in and subject to the laws of the State of California.

## FACTUAL BACKGROUND

15. As more fully discussed in the *Declaration of Greg Tribou in Support of the Debtors' Chapter 11 Petitions and Requests for First Day Relief*,[4] prior to the Petition Date, the Debtors were a product development company and multichannel retailer that offered a number of highly distinctive and uniquely designed products. The Debtors marketed their branded products,

---

[4] Docket No. 2, incorporated herein by reference.

and those of their third party product partners, in four channels: (i) mall retail, (ii) airport retail, (iii) e-commerce, and (iv) wholesale. As of the Petition Date, the Debtors operated 137 retail stores across 40 states and Puerto Rico. In addition, the Debtors operated one liquidation center in North Conway, New Hampshire. Of the 137 retail stores, 102 stores were located in malls and 35 stores were located in airports.

16. Prior to the Petition Date, the Debtors, as a product development company and multichannel retailer, maintained business relationships with various business entities, through which the Debtors regularly purchased, sold, received, and/or delivered goods and services.

17. As a product development company and multichannel retailer, the Debtors regularly purchased goods from various entities including vendors, creditors, suppliers and distributors. The Debtors also regularly paid for services used to facilitate their business.

18. The Debtors' financial difficulties that led to the decision to file petitions for bankruptcy are attributable to a combination of factors, all of which placed significant stress on the Debtors' liquidity position in the months leading up to the Petition Date. These factors included, among other things: (i) a prior bankruptcy filing in 2014; (ii) lagging sales due to supply chain difficulties; (iii) a decline in foot traffic at malls; (iv) consistent leadership and technology changes that negatively impacted the e-commerce platform; and (v) a cutback of funding from a lender.

19. As of the Petition Date, the Debtors utilized a cash management system (the "Cash Management System") for the collection, concentration, management, and disbursement of funds

in the Debtors' business.[5] As of the Petition Date, the Cash Management System consisted of store deposit accounts, master accounts, concentration accounts, operating accounts, and other accounts. [See Docket No. 14].

20. Among these bank accounts, disbursements to vendors were made from accounts ending 1708 and 0447 held by Debtor Brookstone Company, Inc. at Wells Fargo, N.A. (the "Disbursements Accounts"). The Debtors' funds were collected in the Disbursement Accounts through the Cash Management System. Upon information and belief, based upon the collection of the Debtors' funds from operations into the Disbursement Accounts and subsequent payment of the Debtors' accounts, the Debtor incurring each debt ultimately caused the payments on each of its debts issuing from the Disbursement Accounts.

21. During the ninety (90) days before the Petition Date, that is between May 4, 2018 and August 2, 2018 (the "Preference Period"), the Debtors continued to operate their business affairs, including the transfer of property, either by checks, cashier checks, wire transfers, ACH transfers, direct deposits or otherwise to various entities. The Debtors drew upon the Disbursement Accounts to pay for their operational costs, including to pay their vendors, suppliers, distributors, and other creditors, including Defendant.

22. Upon information and belief, during the course of their relationship, the Defendant and one or more of the Debtors entered into agreements, which are evidenced by invoices, communications and other documents (collectively, the "Agreements"). The Agreements concerned and related to the goods and/or services provided by Defendant as described in the

---

[5] More information on the cash management system can be found in the *Debtors' Motion for Interim and Final Orders Authorizing (A) The Maintenance of the Cash Management System; (B) Maintenance of the Existing Bank Accounts; (C) Continued Use of Existing Business Forms; (D) Continued Performance of Intercompany Transactions in the Ordinary Course of Business and Grant of Administrative Expense Status for Postpetition Intercompany Claims and (E) Granting Related Relief* [Docket No. 5], incorporated herein by reference.

"Parties" section of this Complaint. The details of each of the Agreements paid for during the Preference Period are set forth on the Statement of Account, which is attached hereto and incorporated by reference as Exhibit A. Such details include "Invoice Number," "Invoice Date," and "Invoice Amount."

23.     Defendant conducted business with one or more of the Debtors through and including the Petition Date pursuant to the Agreements.

24.     As identified in the Agreements identified on Exhibit A, one or more of the Debtors purchased goods and/or services from Defendant or otherwise held a debt owed by one or more of the Debtors.

25.     Plaintiff has completed an analysis of all readily available information of the Debtors and is seeking to avoid all of the transfers of an interest of the Debtors' property made by the applicable Debtor(s) to Defendant within the Preference Period.

26.     Plaintiff has determined that one of more of the Debtors made transfer(s) of an interest of the Debtors' property to or for the benefit of Defendant during the Preference Period through payments aggregating to an amount not less than $18,678.85 (the "Transfer" or "Transfers"). The details of each Transfer are set forth on Exhibit A attached hereto and incorporated by reference. Such details include "Check Number," "Check Amount," "Check Clear Date," and "Debtor Transferor(s)."  Additionally, to the extent there are any transfers that cleared the Disbursement Accounts after the Petition Date (the "Post-Petition Transfers"), such amounts are listed on Exhibit A and incorporated herein by reference.

27.     During the course of this proceeding, Plaintiff may learn (through discovery or otherwise) of additional transfers made to Defendant during the Preference Period. It is Plaintiff's intention to avoid and recover all transfers made by the Debtors of an interest of the Debtors in

property and to or for the benefit of Defendant or any other transferee. Plaintiff reserves its right to amend this original Complaint to include: (i) further information regarding the Transfer(s), (ii) additional transfers, (iii) modifications of and/or revision to Defendant's name, (iv) additional defendants, and/or (v) additional causes of action, if applicable (collectively, the "Amendments"), that may become known to Plaintiff at any time during this adversary proceeding, through formal discovery or otherwise, and for the Amendments to relate back to this original Complaint.

## CLAIMS FOR RELIEF

### COUNT I
### (Avoidance of Preference Period Transfers – 11 U.S.C. § 547)

28. Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein.

29. As more particularly described on Exhibit A attached hereto and incorporated herein, during the Preference Period, the Debtor(s) identified on Exhibit A made Transfers to or for the benefit of Defendant in an aggregate amount not less than $18,678.85.

30. Each Transfer was made from the Disbursement Accounts described *supra,* and constituted transfers of an interest in property of the transferring Debtor(s) as identified on Exhibit A.

31. Defendant was a creditor at the time of each Transfer by virtue of supplying the Debtor(s) identified on Exhibit A goods and/or services identified in this Complaint and in the Agreements, as more fully set forth on Exhibit A hereto, for which the Debtor(s) identified on Exhibit A were obligated to pay following delivery in accordance with the Agreements.

32. Each Transfer was to or for the benefit of a creditor within the meaning of 11 U.S.C. § 547(b)(1) because each Transfer either reduced or fully satisfied a debt or debts then owed by the Debtor(s) identified on Exhibit A to Defendant.

33. Each Transfer was made for, or on account of, an antecedent debt or debts owed by the Debtor(s) identified on Exhibit A to Defendant before such Transfers were made, as asserted by Defendant and memorialized in the Agreements, each of which constituted a "debt" or "claim" (as those terms are defined in the Bankruptcy Code) of Defendant prior to being paid by the transferring Debtor(s) as set forth on Exhibit A hereto.

34. Each Transfer was made while the Debtors were insolvent. Plaintiff is entitled to the presumption of insolvency for each Transfer made during the Preference Period pursuant to 11 U.S.C. § 547(f).

35. Each Transfer was made during the Preference Period, as set forth on Exhibit A.

36. As a result of each Transfer, Defendant received more than Defendant would have received if: (i) the Debtors' case were under chapter 7 of the Bankruptcy Code; (ii) the Transfers had not been made; and (iii) Defendant received payments of its debts under the provisions of the Bankruptcy Code. As evidenced by the Debtors' schedules filed in the underlying bankruptcy case as well as the proofs of claim that have been received to date, the Debtors' liabilities exceed their assets to the point that unsecured creditors will not receive a full payout of their claims from the Debtors' bankruptcy estates.

37. In accordance with the foregoing, each Transfer is avoidable pursuant to 11 U.S.C. § 547(b).

## COUNT II
**(Avoidance of Fraudulent Conveyances – 11 U.S.C. § 548(a)(1)(B))**

38. Plaintiff hereby incorporates all previous allegations as though fully set forth herein.

39. To the extent one or more of the Transfers identified on Exhibit A was not made on account of an antecedent debt, was a prepayment for goods and/or services subsequently

9

received, or was a transfer made by one Debtor that was not ultimately directed by the Debtor incurring the debt, Plaintiff pleads in the alternative that the Debtor(s) making such transfer(s) did not receive reasonably equivalent value in exchange for such transfer(s) (the "Potentially Fraudulent Transfers"); and

    A.    The Debtors were insolvent as of the date of the Transfer(s), or became insolvent as a result of the Transfer(s); or

    B.    The Debtors were engaged, or about to engage, in business or a transaction for which any property remaining with the Debtors or for whose benefit the Transfer(s) was made was an unreasonably small capital; or

    C.    The Debtors intended to incur, or believed they would incur, debts beyond their ability to pay upon maturity.

40.    Based upon the foregoing, the Potentially Fraudulent Transfers are avoidable pursuant to 11 U.S.C. § 548(a)(1)(B).

## COUNT III
**(Avoidance of Unauthorized Post-Petition Transfers – 11 U.S.C. § 549)**

41.    Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein.

42.    To the extent any of the Transfer(s) identified on Exhibit A cleared the Disbursement Accounts after the Petition Date, including any Post-Petition Transfers currently listed on Exhibit A, and such Transfers and were not authorized by the Court or the Bankruptcy Code, Plaintiff pleads in the alternative that such Post-Petition Transfers are avoidable pursuant to 11 U.S.C. § 549.

## COUNT IV
### (Recovery of Avoided Transfers – 11 U.S.C. § 550)

43. Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein, to the extent they are not inconsistent with allegations contained in this Count.

44. Plaintiff is entitled to avoid the Transfer(s) pursuant to 11 U.S.C. § 547(b), any Potentially Fraudulent Transfers pursuant to 11 U.S.C. § 548, and/or any Post-Petition Transfers pursuant to 11 U.S.C. § 549 (collectively, the "Avoidable Transfers").

45. Defendant was the initial transferee of the Avoidable Transfer(s) or the immediate or mediate transferee of such initial transferee or the person for whose benefit the Avoidable Transfer(s) were made.

46. Pursuant to 11 U.S.C.§ 550(a), Plaintiff is entitled to recover from Defendant the Avoidable Transfer(s), plus interest thereon to the date of payment and the costs of this action.

## COUNT V
### (Disallowance of all Claims – 11 U.S.C. § 502(d) and (j))

47. Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein.

48. Defendant is a transferee of transfers avoidable under sections 547, 548, and/or 549 of the Bankruptcy Code, which property is recoverable under section 550 of the Bankruptcy Code.

49. Defendant has not paid the amount of the Avoidable Transfer(s), or turned over such property, for which Defendant is liable under 11 U.S.C. § 550.

50. Pursuant to 11 U.S.C. § 502(d), any and all Claims of Defendant and/or its assignee, against the Debtors' chapter 11 estates or Plaintiff must be disallowed until such time as Defendant pays to Plaintiff an amount equal to the aggregate amount of the Avoidable Transfer(s), plus interest thereon and costs.

51. Pursuant to 11 U.S.C. § 502(j), any and all Claims of Defendant, and/or its assignee, against the Debtors' chapter 11 estates or Plaintiff previously allowed by the Debtors or by Plaintiff, must be reconsidered and disallowed until such time as Defendant pays to Plaintiff an amount equal to the aggregate amount of the Avoidable Transfer(s).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court grant him the following relief against Defendant:

A. On Plaintiff's First, Second, Third and Fourth Claims for relief, judgment in favor of Plaintiff and against Defendant, avoiding all of the Avoidable Transfers and directing Defendant to return to Plaintiff the amount of the Avoidable Transfers, pursuant to 11 U.S.C. §§ 547(b), 548, and/or 549 and 550(a), plus interest from the date of demand at the maximum legal rate and to the fullest extent allowed by applicable law, together with the costs and expenses of this action including, without limitation, attorneys' fees;

B. On Plaintiff's Fifth Claim for Relief, judgment in favor of Plaintiff and against Defendant disallowing any claims held or filed by Defendant against the Plaintiff until Defendant returns the Avoidable Transfers to Plaintiff pursuant to 11 U.S.C. § 502(d) and (j); and

C. Granting Plaintiff such other and further relief as this Court may deem just and proper.

Dated: December 27, 2019

**BAYARD, P.A.**

By: /s/ Justin Alberto
Justin Alberto, Esq. (No. 5126)
Erin R. Fay (No. 5268)
600 North King Street, Suite 400
Wilmington Delaware 19801
Telephone: (302) 655-5000

*-and-*

**ASK LLP**
Joseph L. Steinfeld, Jr., Esq., MN SBN 0266292
Gary Underdahl, Esq., MN SBN 0301693
ASK LLP
2600 Eagan Woods Drive, Suite 400
St. Paul, MN  55121
Telephone: (651) 289-3857
Fax: (651) 406-9676
Email: gunderdahl@askllp.com

*Counsel for the Plaintiff*